(No. 49954

GALE BRABAND *et al.*, Appellees, v. BEECH AIR-CRAFT CORPORATION *et al.*—(Beech Aircraft Corporation, Appellant.)

*Opinion filed Oct. 6, 1978.—Rehearing denied Dec. 1, 1978.*

KLUCZYNSKI, J., took no part.

Lord, Bissell & Brook, of Chicago (Gary W. Westerberg, Hugh C. Griffin and Richard E. Mueller, of counsel), for appellant.

Philip H. Corboy and Associates, of Chicago (Philip H. Corboy, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1971, ch. 70, par. 1 *et seq.*) plaintiffs, Gale Braband and Elizabeth Forsythe, administrators of their respective deceased husbands' estates, brought these consolidated actions in the circuit court of Cook County against defendant Beech Aircraft Corporation, hereafter defendant, and other defendants not involved in this appeal. The circuit court denied defendant's motion to quash the service of summons and included in its order the findings requisite to an application for leave to appeal. (Supreme Court Rule 308, 58 Ill. 2d R. 308.) The appellate court allowed defendant's application for leave to appeal, affirmed the order of the circuit court (51 Ill. App. 3d 296), and granted a certificate of importance permitting an appeal to this court. Supreme Court Rule 316, 58 Ill. 2d R. 316.

The agreed statement of facts filed in the circuit court shows that an airplane, designed and manufactured by defendant, crashed as it approached an airport near Frobisher Bay, Northwest Territories, Canada, and that the three pilots on board were killed. Plaintiffs are the administrators of the estates of James L. Braband and Donald Forsythe, two of the pilots. The airplane was manufactured by defendant in Wichita, Kansas, and in 1966 was sold by defendant to Tex-Sun Beechcraft, Inc., located in San Antonio, Texas. In 1968 Tex-Sun sold it to Mission Broadcasting Company, located in Reno, Nevada. In 1971, Mission Broadcasting sold the aircraft to Coleman

Aircraft Corporation of Morton Grove, Illinois. After being based in Illinois for a period of time, the aircraft was apparently sold by Coleman to Eagle Aircraft Services, Ltd., of London, England, and at the time of the crash was being flown from Morton Grove to London. The decedents were, and their surviving dependents have at all times been, residents of Illinois. When the airplane crashed it was owned by either Coleman or Eagle and was being piloted by Eagle's employee, James Going.

In affirming the circuit court's order, the appellate court majority filed two separate opinions. The lead opinion based the affirmance on the ground that defendant was amenable to service under section 17 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 17) for the reason that it had, within the contemplation of that section, committed a "tortious act" within this jurisdiction. The rationale of the special concurrence was that by reason of its contractual relationship with Hartzog Aviation Co., a distributor of defendant's products, defendant was present and doing business in Illinois and was therefore amenable to service of process under the provisions of sections 16 and 13.3 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, pars. 16, 13.3).

The statutes in pertinent part provide:

> "Sec. 13.3. Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." Ill. Rev. Stat. 1971, ch. 110, par. 13.3.

> "Sec. 16. Personal service outside State.
> (1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within

this State; otherwise it shall have the force and effect of service by publication." Ill. Rev. Stat. 1971, ch. 110, par. 16(1).

"Sec. 17. Act submitting to jurisdiction—Process.

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State;

(b) The commission of a tortious act within this State;

\* \* \*

(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.

(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law." Ill. Rev. Stat. 1971, ch. 110, par. 17.

In count I of plaintiffs' amended complaint directed against defendant as the manufacturer of the airplane, and another defendant as the manufacturer of the altimeter, a component part of the airplane, it was alleged:

"At the time and place aforesaid, the airplane and the altimeter were designed, manufactured, assembled and sold in a condition that was not reasonably safe in one or more of the following respects:

a. That the airplane was not aerodynamically sound and was likely to crash when used and/or flown in a reasonably foreseeable manner.

b. That the altimeter was manufactured in such a manner that it did not reflect accurate altitude readings for the airplane when said airplane was airborne and when the aircraft was being flown in a manner which was reasonably foreseeable.

c. That the altimeter was manufactured and sold without any warnings that it was likely not to reflect accurate altitude readings for the aircraft when said aircraft was airborne and when the aircraft was being flown in a manner which was reasonably foreseeable."

Defendant concedes that if it was amenable to service of process in Illinois, such service was properly made. It contends, however, that the appellate and circuit courts erred for the reasons that this cause did not arise out of the commission of a tortious act within the State of Illinois and that the activities of Hartzog Aviation, Inc., a separate independent Illinois corporation, did not, in this case, serve to subject defendant to the jurisdiction of the courts of Illinois. It is plaintiffs' position that defendant committed a tortious act in Illinois within the contemplation of section 17 of the Civil Practice Act and that defendant was "present and doing business in Illinois" and therefore amenable to service of process.

The question whether a State may appropriately assert jurisdiction over a foreign corporation has been the subject of frequent litigation. Recently, in *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569, the Supreme Court reviewed the pertinent authorities commencing with *Pennoyer v. Neff* (1878), 95 U.S. 714, 24 L. Ed. 565, and concluded that the standards elucidated in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, continued to be the test of a State's jurisdiction over a foreign corporation. The standards prescribed in *International Shoe Co.* are that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain

minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) In *Shaffer,* after quoting the foregoing language from *International Shoe Co.,* the court said:

"[T] he inquiry into the State's jurisdiction over a foreign corporation appropriately focused not on whether the corporation was 'present' but on whether there have been

'such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' [326 U.S. 310, 317, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.]

Mechanical or quantitative evaluations of the defendant's activities in the forum could not resolve the question of reasonableness:

'Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.' [326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154,. 160.] " 433 U.S. 186, 203-04, 53 L. Ed. 2d 683, 697, 97 S. Ct. 2569, 2580.

Assuming that "due process is satisfied" the assertion of jurisdiction over a foreign corporation has traditionally required the finding that it was "present and doing

business" within this jurisdiction. (See discussion, *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 327.) The difficulties encountered in the application of this concept to given factual situations were noted in *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569, wherein the Supreme Court said:

> "The motorists' consent theory was easy to administer since it required only a finding that the out-of-state driver had used the State's roads. By contrast, both the fictions of implied consent to service on the part of a foreign corporation and of corporate presence required a finding that the corporation was 'doing business' in the forum State. Defining the criteria for making that finding and deciding whether they were met absorbed much judicial energy. See, *e.g. International Shoe Co. v. Washington,* 326 U.S., at 317-319. While the essentially quantitative tests which emerged from these cases purported simply to identify circumstances under which presence or consent could be attributed to the corporation, it became clear that they were in fact attempting to ascertain 'what dealings make it just to subject a foreign corporation to local suit'. *Hutchinson v. Chase & Gilbert,* 45 F.2d 139, 141 (CA2 1930) (L. Hand, J.)." 433 U.S. 186, 203, 53 L. Ed. 2d 683, 697, 97 S. Ct. 2569, 2579.

In *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, the court said:

> "In the context of our evolving concepts of jurisdictional requirements, the Supreme Court has observed:
>
> > ' "[T]raditional notions of fair play and substantial justice" can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of

new procedures that are inconsistent with the basic values of our constitutional heritage.' *Shaffer v. Heitner* (1977), 433 U.S. 186, 212, 53 L. Ed. 2d 683, 703, 97 S. Ct. 2569, 2584." 68 Ill. 2d 38, 46.

"The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." (*Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 445, 96 L. Ed. 485, 492, 72 S. Ct. 413, 418.) Assuming that upon the facts shown by the record "due process is satisfied" the decision whether to take or decline jurisdiction is left to the General Assembly and the courts of this State. *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 448, 96 L. Ed. 485, 494, 72 S. Ct. 413, 420.

Sections 16 and 17 of the Civil Practice Act were amended in 1955 (1955 Ill. Laws 2238, 2245-46), and shortly after the amendments became effective on January 1, 1956, their validity was challenged in *Nelson v. Miller* (1957), 11 Ill. 2d 378. In 1954 the defendant in *Nelson,* a Wisconsin resident engaged in the business of selling appliances, had sent one of his employees to deliver appliances to the plaintiff in Illinois. In the course of that delivery, as the result of the negligence of defendant's employee, the plaintiff was injured. Plaintiff filed suit in 1955 and made two unsuccessful attempts to serve the defendant with summons in Illinois. In February 1956, summons was served personally on the defendant in Wisconsin. The circuit court allowed the defendant's motion to quash the summons, and the plaintiff appealed. In reversing the order and upholding the service of process on the defendant the court said:

"The foundations of jurisdiction include the interest that a State has in providing redress in its

own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy. The limits on the exercise of jurisdiction are not 'mechanical or quantitative' (*International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945),) but are to be found only in the requirement that the provisions made for this purpose must be fair and reasonable in the circumstances, and must give to the defendant adequate notice of the claim against him, and an adequate and realistic opportunity to appear and be heard in his defense." (11 Ill. 2d 378, 384.)

The court concluded that "Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." 11 Ill. 2d 378, 389.

From the agreed statement of facts it does not appear that plaintiffs' causes of action arose from any act of defendant's distributor Hartzog, or that the relationship between Hartzog and defendant was in any manner connected with the occurrence in which plaintiffs' decedents were killed; nor does it appear that plaintiffs' causes of action arose from "the transaction of any business within this State" (Ill. Rev. Stat. 1971, ch. 110, par. 17(1)(a)). Relying principally upon *Cannon Manufacturing Co. v. Cudahy Packing Co.* (1925), 267 U.S. 333, 69 L. Ed. 634, 45 S. Ct. 250, and its progeny, defendant argues that Mr. Justice Stamos, specially concurring in the appellate court's affirmance of the circuit court's order, erroneously concluded that by reason of its contractual relationship with its distributor, Hartzog, defendant was "present and doing business" in Illinois. We note that *Cannon* was decided more than 20 years prior to the decision in *International Shoe Co.* and did not purport to decide any question other than whether conducting

business through a wholly owned subsidiary rendered the parent corporation amenable to process in the State where the subsidiary did business. The Supreme Court stated that:

> "The obstacle insisted upon is that the court lacked jurisdiction because the defendant, a foreign corporation, was not within the State. No question of the constitutional powers of the State, or of the federal Government, is directly presented. The claim that jurisdiction exists is not rested upon the provisions of any state statute or upon any local practice dealing with the subject. The resistance to the assumption of jurisdiction is not urged on the ground that to subject the defendant to suit in North Carolina would be an illegal interference with interstate commerce. Compare *International Harvester Co. v. Kentucky,* 234 U.S. 579, 587-89. The question is simply whether the corporate separation carefully maintained must be ignored in determining the existence of jurisdiction." (267 U.S. 333, 336, 69 L. Ed. 634, 642, 45 S. Ct. 250, 251.)

In our opinion the agreed statement of facts shows that defendant engaged in activities in Illinois in addition to those conducted by Hartzog, and we need not, therefore, decide whether Hartzog's activities standing alone would serve as a sufficient basis to assert jurisdiction.

As required by *International Shoe* and *Shaffer,* we consider "the quality and nature of the activity" in which defendant was engaged and whether it is reasonable to require defendant "to defend the particular suit which is brought [here]." (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 317, 319, 90 L. Ed. 95, 102, 104, 66 S. Ct. 154, 158, 160.) These actions are brought by Illinois residents to recover for the wrongful deaths of Illinois residents during a flight which originated in Illinois ·

and are clearly "within the ambit of the State's legitimate protective policy." (*Nelson v. Miller,* 11 Ill. 2d 378, 384.) The agreed statement of facts shows that defendant and Hartzog are parties to a written agreement under the terms of which Hartzog is permitted to sell defendant's products within a given area of the State of Illinois and which, *inter alia,* requires it to perform all warranty, maintenance and repair service on all Beechcraft planes covered by warranty provisions regardless of whether they were sold by Hartzog. Further, defendant was empowered to inspect Hartzog's complete operation from time to time, including its business facilities, records, supplies and personnel, and could, under certain conditions, without advance notice, terminate the sales agreement. It also appears that defendant's marketing manager frequently visited Hartzog with the express purpose of promoting the sales of defendant's aircraft; that defendant, together with Hartzog, had sponsored a sales program in Illinois which included a film and slide presentation and a dinner for sales prospects in Illinois; and that, for a period of at least five years, advertisements had appeared in the Chicago Metropolitan Area telephone directories to advertise and indicate the presence of locations where defendant's products and parts could be purchased. In view of defendant's activities within Illinois designed to effect sales to residents of Illinois, defendant could reasonably assume that airplanes which it manufactured would be owned by residents of Illinois and in view of the high degree of mobility peculiar to its products could further assume that they would be flown both within Illinois and into other States, or as in this instance, to other countries. We hold, therefore, that as reflected by the agreed statement of facts, defendant's activities show sufficient contacts with this State so that requiring it to defend this action does not offend "traditional notions of fair play and substantial justice."

We hold further that these activities show defendant

to be present and doing business in Illinois and amenable to service of process under sections 13.3 and 16 of the Civil Practice Act. *St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 43.

In view of our holding we do not consider plaintiffs' contention that defendant committed a tortious act within the contemplation of section 17(1)(b) of the Civil Practice Act.

For the reasons herein stated the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.