COOK ASSOCIATES, INC., Plaintiff-Appellee, *v.* LEXINGTON UNITED CORPORATION *et al.*, Defendants-Appellants.

First District (4th Division)    No. 79-1306

Opinion filed June 26, 1980.—Rehearing denied July 25, 1980.

Joel S. Ostrow, of Chicago, for appellants.

Harry D. Lavery and Christopher J. Horvay, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, Cook Associates, Inc. (Cook), brought this breach-of-contract action in the circuit court of Cook County against defendant Lexington United Corporation (Lexington). Lexington filed a special appearance pursuant to section 20 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 20) and moved to quash service of process, alleging the trial court lacked personal jurisdiction over Lexington.

Subsequently, Cook filed an amended complaint joining Edith L. McIntosh as a defendant. The amended complaint restated as one count the facts alleged in the original complaint and added a second count for an alleged interference with a contractual relationship by McIntosh.

After a hearing, the trial court denied Lexington's motion to quash service of process. Lexington filed its answer to the amended complaint, discovery was taken, and Cook subsequently moved for summary judgment against Lexington. The trial court granted this motion, entered judgment against Lexington and ruled there was no just reason for delaying enforcement or appeal of the judgment. Whereupon, Lexington brought this appeal.

On appeal, Lexington contends (1) the trial court did not have personal jurisdiction over it; and (2) the motion for summary judgment was improperly granted because there exist genuine issues of material fact.

We reverse. There was no personal jurisdiction over Lexington in this case. The facts pertinent to this issue are as follows.

Cook is an employment agency specializing in the placement of professionals with employers who pay a fee for Cook's services. Cook, an Illinois corporation, carries on its business from offices in Chicago. Lexington, a Delaware corporation, engages in the manufacture and sale of dinnerware from its place of business in St. Louis, Missouri.

From July 1973 until July 1976, Cook maintained a branch office in Massachusetts where defendant McIntosh worked for Cook as an employment counselor. In early May 1976, Joseph Runza, who was in charge of hiring new salespersons for Lexington, telephoned McIntosh, with whom Runza had dealt on several occasions in Massachusetts from his office in St. Louis. He told McIntosh that Lexington needed a new field or national sales manager. McIntosh agreed to supply him with the names of several capable applicants.

On May 13, 1976, McIntosh sent a letter to Runza containing the names of the potential employees, including Gregg Hoegemeier, a resident of Missouri. Attached to this letter was Cook's schedule of fees which indicated Cook's Chicago address in the letterhead. Under the terms set out in this schedule of fees, Lexington was required to pay Cook for its service if it hired any applicant submitted by Cook within two years after the applicant's name was submitted. Also attached to the letter was Hoegemeier's resume which indicated Cook's Chicago address in the letterhead.

Later, Runza contacted Hoegemeier and a meeting was arranged which took place in Chicago. Why the meeting took place in Chicago is not explained in the record. There, Runza offered Hoegemeier the position of field sales manager at a salary of $22,000 per year. Hoegemeier turned down this offer and had no further contacts with Lexington for several months.

In July 1976, McIntosh's employment with Cook was terminated and Cook closed its Massachusetts office. In the fall of 1976, McIntosh opened her own employment agency in Massachusetts. Soon thereafter, Runza again contacted McIntosh and told her Lexington needed a national sales manager. McIntosh, on behalf of her own employment agency, resubmitted Hoegemeier for the position. Runza offered Hoegemeier the position at a salary of $25,000 per year and Hoegemeier accepted. Hoegemeier began working for Lexington in December 1976. For her services, McIntosh was paid $5,000 by Lexington.

Upon hearing of the above events, Cook demanded a fee from Lexington. Lexington refused and Cook brought this action in July 1977 to recover a $5,000 fee.

Process was served on Lexington's president, Frank Ivich, while he was visting McCormick Place, a hotel and convention center in Chicago. At the time, Ivich, on behalf of Lexington, was attending a week long housewares exhibition at McCormick Place. With Ivich were several other officers of Lexington. Lexington was there to display its products and hand out brochures. While there, Lexington received close to $50,000 worth of orders for its products, which orders were later accepted by Lexington at its headquarters in St. Louis.

Prior to this exhibition, Lexington, through Ivich and the other officers, had attended two similar exhibitions held at McCormick Place in July 1976 and January 1977. At each of these exhibitions Lexington received and later accepted close to $50,000 worth of orders for its products.

Lexington does not maintain any offices or permanent employees in Illinois. It does do some business in Illinois through an independent manufacturers' representative who works on a commission basis for

several manufacturers. On four occasions in the year prior to this action, an employee of Lexington had accompanied the representative on his sales meetings with Illinois retailers. The record does not indicate the purpose for this employee accompanying the representative or the amount of business Lexington does through the representative.

OPINION

Lexington contends that jurisdiction could only be asserted over it in the present case by applying the rules of section 17 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 17), Illinois' long-arm statute. Under one part of that section, a defendant is deemed to have submitted to the jurisdiction of this State as to any cause of action arising out of the transaction of any business in this State. Lexington contends that since the present cause of action did not arise out of its business transactions in this State, there can be no personal jurisdiction.

Cook counters this argument by alleging that process was served in this case pursuant to the rules of section 13.3 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 13.3) which permits service on a corporation found in this State. Cook contends that when service is performed under this section the rules of section 17 are inapplicable. Cook concludes that personal jurisdiction can be found here by applying either the "minimum contacts" standard or the "doing business" standard.

■■ Hence, what we have in this case is the parties arguing that three different standards are potentially applicable. Lexington argues the strict wording of section 17 should apply. Cook argues that either the minimum contacts standard or the doing business standard should apply. It appears to us that all of the proposed standards are probably one and the same—minimum contacts. (See *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; compare *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, with *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413, and *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569.) Regardless, it is required under the due process clause (U.S. Const., amend. XIV) that before a State can render a binding judgment over a nonresident defendant, that defendant must have certain minimum contacts with the State so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) Since we cannot find minimum contacts in the present case, we must hold that personal jurisdiction did not exist.

The due process clause serves a three-fold purpose concerning the issue of personal jurisdiction. It ensures that the defendant will have adequate notice of the suit. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559; *Mullane v.*

*Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.) It protects the defendant against the burdens of litigating in a distant and inconvenient forum. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) And it ensures the orderly administration of the law, thereby giving a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.

In the present case, Lexington concedes it had adequate notice of the suit. It could also be found that Lexington has not suffered any undue inconvenience by having to defend this suit in Illinois. The question is whether the assertion of jurisdiction over Lexington would offend the orderly administration of the laws. Would the assertion of jurisdiction in this case defeat the degree of predictability to the legal system required by the due process clause?

The test to be applied in determining this question is whether Lexington, in carrying out its activities, could have reasonably anticipated being haled into court here to defend this cause of action. (See *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559.) To determine this requires an analysis of the relationship among the defendant, the forum, and the litigation. (*Rush v. Savchuk* (1980), ___ U.S. ___, 62 L. Ed. 2d 516, 100 S. Ct. 571; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569.) Sometimes the relationship between the defendant and forum State is so substantial that a defendant could reasonably anticipate being haled into court there to defend any cause of action, including one unrelated to the forum State. (See *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413.) Sometimes the relationship between the forum State and the litigation is so substantial that a defendant need only have an indirect connection with the State to find that he could have reasonably anticipated being haled into court there to defend the cause of action alleged. (See *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) But in the present case we cannot find a sufficient relationship among the defendant, the forum, and the litigation to show that Lexington could have reasonably anticipated being haled into court here to defend this action.

Though Lexington does some business in Illinois and representatives of Lexington periodically come to Illinois to display its wares and solicit business, we do not believe its activities in this State are so substantial that Lexington could have reasonably anticipated being haled into court here to defend a cause of action unrelated to those activities. All of Lexington's

activities involved in this cause of action took place outside of Illinois except for a chance meeting between Lexington and Hoegemeier in Chicago. Hence, except for the fact that plaintiff in this case is an Illinois corporation, this State has little or no contacts with this litigation. Lexington could have predicted that its activities involved in this cause of action could have led to suit in Missouri or Massachusetts, thus allowing it to structure its conduct in conformity with the laws of those States, but it could not have predicted that those activities would have led to suit in Illinois. The mere fact that Cook's Chicago address appeared in letterheads on forms sent to Lexington does not change this fact. To be able to have reasonably anticipated being haled into court here requires something more. Otherwise, any defendant who dealt with a nationwide corporation could be subjected to suit wherever that corporation kept its home office based merely on the happenstance that defendant received a letter indicating the corporation's home office address.

■■ Hence, we hold in this case that there was an insufficient relationship among the defendant, the forum, and the litigation to show that Lexington could have reasonably anticipated being haled into court here to defend this cause of action. Thus, we must hold that the minimum contacts required by the due process clause do not exist.

Accordingly, for the reasons noted, we reverse the judgment entered in this case against Lexington because of lack of personal jurisdiction to enter it.

Reversed.

JIGANTI and ROMITI, JJ., concur.