**WISCONSIN CAN COMPANY, Plaintiff,**

v.

**BANITE, INC., etc. et al., Defendants.**

**No. 80 C 4192.**

United States District Court,
N. D. Illinois, E. D.

Nov. 26, 1980.

Paul J. Maganzini, James E. McMahon, Chicago, Ill., for plaintiff.

James F. Flanagan, Michael T. Reid, Halfpenny, Hahn & Roche, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This diversity action is brought by Wisconsin Can Company ("Wisconsin Can") against defendants Banite, Inc. ("Banite," formerly D. L. Skin Care Products, Inc.) and a corporation mistakenly sued as D. L. Skin Care Products, Ltd. because of defendants' claimed non–payment for cans manufactured by Wisconsin Can and sold to defendants to be used as containers for their manufactured soap products. Each of Banite and Banite, Inc., Canada ("Banite–Canada," a Canadian corporation formerly known as D. L. Skin Care Ltd.) has filed a special appearance to object to personal jurisdiction and has moved to quash the service of summons. Banite–Canada has also moved to dismiss this action under Fed.R. Civ.P. 19 on the ground that it is an indispensable party to this action and has neither been joined as a defendant nor served with process. For the reasons stated in this memorandum opinion and order defendants' motions, except for Banite–Canada's motion to quash, are denied.

### Facts

Both Banite and Banite–Canada are manufacturers of soap products, Banite being incorporated and having manufacturing facilities in Buffalo, New York and Banite–Canada being incorporated and having its manufacturing facilities in Toronto, Ontario, Canada. For some twenty years Wiscon-

sin Can has been manufacturing cans for Banite, as the result of an original solicitation in Buffalo by Wisconsin Can's sales manager and either the continuing calls by Wisconsin Can representatives in Buffalo or from numerous telephone orders placed by Banite over the years. Banite has not knowingly entered into any written contracts in Illinois or governed by Illinois law in connection with matters that are the subject of this action.

All cans purchased by Banite are manufactured by Wisconsin Can in Chicago, the location of its only manufacturing plant, and shipped FOB Chicago to Buffalo. Banite is not licensed to do business in Illinois and has never conducted its soap product manufacturing business in Illinois. It has never had an Illinois office, branch plant, telephone listing or bank account. None of its employees lives in Illinois. Banite's president has only been in Wisconsin Can's Illinois offices three or four times over the years. Except for one occasion, those visits were solely to accept invitations from Wisconsin Can to have lunch and tour their facilities. On one occasion in late 1978, Banite's president attended a meeting at Wisconsin Can's office in Illinois in an effort to resolve a dispute concerning the account between the parties and Wisconsin Can's refusal to ship until the dispute was resolved. None of Banite's other employees has entered Illinois for the purpose of purchasing cans from Wisconsin Can.

Banite–Canada characterizes itself as a separate corporation, having separate ownership and separate operations from Banite. All of the facts just outlined as to the absence of Banite's Illinois contacts also apply to Banite–Canada. Banite–Canada's position is that Wisconsin Can sold cans directly to it and not through Banite. However, the purchase orders from Banite and Banite–Canada are on the identical forms listing *both* the Buffalo and Toronto locations, show the purchaser as "Banite, Inc. formerly DL Skin Care Products, Ltd., Inc." provide alternative instructions (to be indicated by an "x") for billing and shipping to the "Inc." (Buffalo) or "Ltd." (Toronto) locations and, where shipment to Toronto is indicated, are stamped:

To ensure prompt payment mail invoice to:

Banite, Inc.

47 East Market Street

Buffalo, New York 14204

Letterheads of the two companies clearly reflect the same kind of interrelationship, leading anyone dealing with them to regard them as involved in a parent–subsidiary or other closely–linked relationship. Both the affidavit of Wisconsin Can's salesman in charge of the Banite account and the correspondence from the Buffalo and Toronto plants belie the claims of separateness made by Banite and Banite–Canada.

Although Banite and Banite–Canada thus do not have any meaningful Illinois contacts in the *purchase* of cans from Wisconsin Can, that is not the case with respect to Banite's *sales* of its own manufactures. Banite's product line of D. L. Skin Care Products is sold throughout Illinois under the name "Blue Label Hand Cleaner." Banite also produces private label merchandise for Sears Roebuck & Co., headquartered in Chicago, and Safety–Kleen Corp., located in Elgin.

*Jurisdiction over the Person of Defendants*

Banite and Banite–Canada seek to rely on a 1979 decision of our Court of Appeals in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), cert. denied, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), in opposing personal jurisdiction over the Banite entities. There the Court held that due process protected a corporate purchaser from having to defend suit in the forum, where its only contacts with the forum were telephone and mail communication with a forum–based manufacturer with whom the out–of–state defendant had placed an order—essentially the obverse of the coin that the Banite defendants claim the present case represents. Analysis reflects their reliance to be misplaced.

As the first step in the analysis, because this is a diversity action we must determine

whether an Illinois state court would assert jurisdiction over Banite and Banite–Canada under the circumstances presented here. Such assertion is a necessary, though not a sufficient, condition for the same assertion by this Court. If on the facts an Illinois court would *not* permit suit against a defendant, this Court need not undertake its independent analysis of what due process would allow.[1]

■ We need not pause long over that threshold inquiry. Illinois' long–arm statute (Ill.Rev.Stat. ch. 110, § 17(1)(a)) holds that by transacting any business within Illinois a party submits itself to the jurisdiction of Illinois courts as to any cause of action arising from so doing. *Braband v. Beech Aircraft Corp.*, 72 Ill.2d 548, 21 Ill. Dec. 888, 382 N.E.2d 252 (1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979), has most recently reasserted the principle that jurisdiction exists over a foreign corporation if (1) federal due process is satisfied and (2) the corporation has had sufficient "minimum contacts" with Illinois to make it reasonable to require the corporation to defend the suit. In their case–by–case analysis of the issues, Illinois courts have consistently held that the General Assembly intended to extend the reach of the long–arm statute to the outermost boundaries permitted by the due process clause. *Braband v. Beech Aircraft Corp.*, 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978), *cert. denied*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979); *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957).

■ Thus the preliminary question of Illinois law merges with the federal constitutional question. We turn then to that question, as exemplified not only by *Lakeside Bridge* but by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90

L.Ed. 95 (1945), and its progeny, most recently *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*Lakeside Bridge* analyzed the pre-*World–Wide Volkswagen* decisions and insulated from suit a one–transaction defendant that had never availed itself of the privilege of carrying on activities within the forum state. Three factors emphasized by Wisconsin Can to distinguish this case from *Lakeside Bridge* may or may not be distinctions without a legal difference, as Banite claims them to be:

(1) Unlike the single–purchase defendant in *Lakeside Bridge*, Banite has made a great many purchases from Wisconsin Can over the years (since January 1, 1977 Banite and Wisconsin Can have had 306 transactions aggregating $1,585,600.58 in purchases, most of those transactions having resulted from phone orders by Banite employees to Wisconsin Can and not from any direct solicitation by Wisconsin Can or any of its employees). Banite's answer is that Wisconsin Can's "unilateral activity" in Illinois by a single manufacture and sale is not constitutionally sufficient to bring Banite into court and that multiplying that activity does not change the conclusion. That argument is a disturbing one because it seems to prove too much. There is surely a point at which individual cords, each of which is itself inadequate to tie up a ship, will combine into a hawser that will moor a very large vessel indeed.

(2) Banite's president has made limited visits to Illinois, one of which was in an effort to resolve a dispute over the account between the parties. Defendants' argument that an offer in compromise is inadmissible into evidence under Fed.R.Evid. 408 is of course really irrelevant. But post–

1. In response to this Court's request for supplemental briefing of that issue, not addressed by the parties' original memoranda, defendants' counsel missed the thrust of the question, saying only, "In our opinion Illinois courts should under the factual situation in this case refuse jurisdiction." Interestingly enough in light of the remaining discussion in this opinion, however, they cited recent Illinois authority for the

proposition that "the one criteria [sic] that has been established is 'The defendant must have voluntarily invoked the protection and benefits of the laws of the state.' " *Chicago Film Enterprises v. Jablanow*, 55 Ill.App.3d 739, 742, 13 Ill.Dec. 466, 468–469, 371 N.E.2d 161, 163–64 (1st Dist. 1977); *Muffo v. Forsyth*, 37 Ill.App.3d 6, 9, 345 N.E.2d 149, 152 (5th Dist. 1976).

*Lakeside Bridge* District Court decisions in our Circuit have held such limited contacts not jurisdictionally significant. *Waukesha Engine Div. v. Banco Nacional de Fomento,* 485 F.Supp. 490 (E.D.Wis.1980); *Met–L–Wood Corp. v. Lifetime Pools, Inc.,* 475 F.Supp. 149 (N.D.Ill.1979). One such District Court decision was reversed by our Court of Appeals (thus distinguishing *Lakeside Bridge* ) earlier this year in *Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.,* 619 F.2d 676 (7th Cir. 1980), holding *two* visits by defendant's agents to the forum state enough to confer jurisdiction. It is not clear whether a single visit, nor directly related to formation or performance of the contract in suit, would more nearly approach *Lakeside Bridge* or *Wisconsin Electrical* (see 619 F.2d at 678–79 n.10).

(3) *Lakeside Bridge* (597 F.2d at 603) stated:

> Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally. Mountain State's belief, which we may assume existed, that Lakeside would choose to perform its contractual obligations in Wisconsin does not constitute an invocation of the benefits and protections of Wisconsin's laws; Mountain State did not "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Here the uncontroverted evidence is that Wisconsin Can had only *one* manufacturing plant, that located in Illinois. On that score, then Circuit Judge Tone stated in *Lakeside Bridge,* 597 F.2d at 603 n.13 (emphasis added):

> We express no opinion on whether the result would be different if the contract required the plaintiff to perform in the forum state *or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary.*

In this Court's opinion the combination of the three factors just discussed might well tip the due process scales in favor (perhaps substantially so) of asserting jurisdiction over Banite. However, that question need not be resolved because of the dispositive fact of Banite's *other* significant contacts with Illinois–its sales of its own product lines here on an ongoing basis. As already indicated, Banite engages in substantial sales of its soap products in Illinois, both under its own product name and as private label manufacturer for major Illinois enterprises.

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), established the "minimum contacts" doctrine, requiring only that asserting jurisdiction be consistent with "traditional notions of fair play and substantial justice." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), amplified the doctrine in terms that cast significant light on the situation here:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

That language was reiterated and the principle was reaffirmed this year in *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567.

As the *Lakeside Bridge* opinion pointed out, 597 F.2d at 602, even though a particular transaction necessarily triggers the effort to assert jurisdiction over a foreign corporation, the Restatement (Second) of Conflict of Laws ("Restatement") § 50 (1971)[2] also emphasizes the relationship be-

---

**2.** Restatement § 50 speaks of the "power" of a state to exercise jurisdiction over a foreign corporation. As already indicated, Illinois intends to employ that power to the fullest extent. Thus the Restatement discussion is squarely applicable to this case.

tween the corporation and the forum state *other than in the transaction sued upon* :[3]

A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects *and of the corporation's relationship to the state* makes the exercise of such jurisdiction unreasonable.

Indeed, although the analysis is not often specifically articulated in terms of the contacts *outside* of the matter in litigation, that is after all the point of the usual litany of non–contacts (see for example *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566; *Lakeside Bridge*, 597 F.2d at 597). Absence of *any* in–state office is referred to, not whether such an office was involved in the transaction in suit; absence of *any* in–state bank deposits is mentioned, whether or not the transaction is a financial one; absence of *any* telephone listing in the forum state is mentioned, not whether the telephone was used in the litigated transaction.

Were the rule otherwise, its application would lead to results wholly unresponsive to *International Shoe's* insistence on "traditional notions of fair play and substantial justice." To put Banite's contentions in *reductio ad absurdum* terms, we might posit:

(1) a foreign corporation whose only manufacturing facilities were outside of Illinois, but with a full sales organization actively engaged in Illinois solicitation of Illinois business out of an Illinois office manned by a substantial administrative organization, with the proceeds of such business deposited and the costs of operation paid out of an Illinois bank account; and

(2) a *particular* transaction resulting from that corporation's purchase of a component part of the corporation's product, manufactured in Ilinois by an Illinois supplier that had received the order by telephone, without any involvement whatever by the corporation's Illinois–based people, with the merchandise being manufactured and shipped from Illinois to the corporation's home plant outside of Illinois, and with payment being made directly by mail from the foreign corporation's home office to the Illinois supplier.

Under Banite's reading of *Lakeside Bridge*, suit in Illinois against the foreign corporation on the particular transaction would be barred on due process grounds because the *transaction* had no Illinois contacts except the "unilateral activity" of the plaintiff Illinois supplier–the "performance of contractual obligations by the plaintiff, not the defendant, in the forum state" (597 F.2d at 601). That conclusion is untenable and is neither a fair reading of *Lakeside Bridge* nor a fair application of the due process clause.[4]

This case differs only in kind (and not materially at that), not in degree, from the posited hypothetical case. Banite has "purposely avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357

---

**3.** Defendants are simply wrong in arguing that the application of that principle is limited to highly dangerous substances. On the contrary, Restatement § 37, Comment a specifically states that if the effects that "could have been anticipated to occur, and ... did occur, in the state are *not* of a sort highly dangerous to persons or things, the question whether the state may exercise jurisdiction over the defendant is likely to depend at least in part upon whether the defendant has other relationships to the state."

**4.** It may be emphasized that the due process analysis involves *two* steps. In the first, the transaction in suit is looked at to determine whether the suit arises out of "the transaction of any business within this State"–the application of the Illinois long–arm statute in due process terms. In the second the *totality* of the defendant's Illinois activities–both in the transaction sued on and in all other respects–is looked at to determine whether the assertion of jurisdiction offends the considerations of "fair play and substantial justice" embodied in the due process clause.

U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); accord, *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Having done so and plainly subjecting itself to Illinois lawsuits arising out of *those* activities, Banite cannot complain about also being subjected to suit in this case. This is not at all the situation adverted to in *Lakeside Bridge*, 597 F.2d at 603 n.12:

> Even the forum state, according to the First Circuit, has an "interest ... in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts...." [citing cases] Whether to prefer this interest of the forum state over others is a policy decision for that state to make, but the possibility of discouraging interstate transactions underscores the potential for unfairness in asserting jurisdiction over an out–of–state defendant who has no relationship with the forum state other than some of the effects of a contract he has entered into.

Banite's Illinois contacts may be contrasted with the mere "collateral relation to the forum State" found insufficient to support jurisdiction in *World–Wide Volkswagen*, 444 U.S. at 299, 100 S.Ct. at 568.

Accordingly Banite's motion to quash service of summons is denied. In this Court's view of the case, amplified in the next section of this opinion, it is unnecessary to decide now whether jurisdiction might also be asserted over Banite–Canada (which apparently does not engage in Illinois sales as does Banite, but which shares with Banite the other factors previously discussed that distinguish *Lakeside Bridge* ).

### *Banite–Canada as an "Indispensable Party"*

It is not necessary to expend substantial discussion on the Fed.R.Civ.P. 19 "indispensable party" argument asserted by defendants. If in fact Banite and Banite–Canada have the separate corporate identi-

ty and integrity urged by defendants, Wisconsin Can could sue Banite only on its sales to Banite. Banite could defend itself against liability on sales to Banite–Canada on the simplest of grounds: It is not liable for the debts of another. Banite–Canada could be sued separately by Wisconsin Can (wherever Banite–Canada could be reached by process) for *its* purchases from Wisconsin Can. There is no element of the indispensable parties concept involved in such a situation at all.

This case however presents material facts, under the affidavits of Wisconsin Can's representatives and the documents of Banite and Banite–Canada themselves, that could impose liability on Banite not only for the purchases of merchandise shipped to Buffalo but for the purchases of merchandise shipped to Canada.[5] If that were the case, it would clearly not be true that "in [its] absence complete relief cannot be accorded among those already parties" (Fed. R.Civ.P. 19(a)(1)). Wisconsin Can's rights could be fully satisfied against Banite, Banite–Canada would not be left subject to any risk of incurring double liability, and again Rule 19 would not demand the presence of Banite–Canada in this litigation.

Accordingly defendants' Rule 19 argument is unsound on any view of this action. Defendants' motion to dismiss on such grounds is denied.

### *Conclusion*

Banite's motions are denied in their entirety, as is Banite–Canada's motion to dismiss under Fed.R.Civ.P. 19. Banite–Canada's motion to quash service of process is granted (such service having apparently been directed to a non–existent New York corporation). Banite is ordered to answer the Complaint on or before December 10, 1980. This case is set for 9:15 a. m. January 13, 1981, at which time counsel for each party are directed to appear and advise the

---

5. Wisconsin Can argues the case as though the question were whether Banite and Banite–Canada are the "same" corporation. That is not the issue. Under the course of dealing here it is entirely possible to recognize the separate

corporate identity of Banite–Canada and nonetheless hold Banite legally responsible for all the purchases. It is of course premature to resolve that question at this state of the litigation.

Court as to its current status. The December 4, 1980 status date is hereby vacated.