**GRACO, INC., Plaintiff,**

v.

**KREMLIN, INCORPORATED, and SKM, a French body corporate.**

No. 81 C 3636.

United States District Court, N.D. Illinois, E.D.

Aug. 23, 1982.

---

Granger Cook, Jr., Edward D. Manzo, Chicago, Ill., Paul L. Sjoquist, Minneapolis, Minn., for plaintiff.

James G. Staples, Thomas E. Johnson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

This matter is before the court on defendant SKM's motion to dismiss for lack of personal jurisdiction. For the reasons stated below, defendant's motion is denied.

### I. Statement of the Facts

Plaintiff, Graco, Inc., a Minnesota corporation, filed a patent infringement suit against SKM, a French corporation, and its wholly owned subsidiary, Kremlin, Inc. The alleged patent infringement involves the manufacture and sale of paint spraying equipment. SKM asserts that this court has no jurisdiction over it under the Illinois long-arm statute.

Based on the record before the court, it appears that the following facts are not in dispute. Kremlin is a two year old Illinois corporation which buys and resells paint spraying equipment. It purchases a large percentage of this equipment from SKM. SKM delivers the purchased goods to Kremlin in France; thus performance of the parties' agreement occurs in France and French law governs the terms and conditions of the sale. Additionally, Kremlin

bears the risk of loss of products purchased from SKM. Kremlin obtains paint spraying equipment from sources other than SKM; however, Kremlin is the only source of SKM products in the United States. A further connection between the two companies is that SKM purchases some component parts from Kremlin.

Kremlin manages an independent distribution network in the United States. Only Kremlin and its distributors are parties to the distribution contracts. These contracts are set up by Kremlin; SKM is not involved in their procurement or execution. Kremlin receives no instruction from SKM in regard to marketing strategy or distribution. Furthermore, Kremlin resells goods purchased from SKM at any location and upon any terms and conditions Kremlin so desires. SKM and Kremlin have separate distributors in Canada and compete with one another in that jurisdiction. There are no distribution contracts between SKM and Kremlin.

SKM owns all of the stock of Kremlin. Gerard Binoche, chairman of the board of Kremlin, is the son of Michel Binoche, president of SKM, and is also employed in some capacity by SKM.[1] Gerard Binoche informed Domingue Lefebvre, president of Kremlin, that it was possible to purchase paint spraying equipment from SKM. Lefebvre was not instructed, however, that SKM was to be the exclusive source of paint spraying equipment for Kremlin. Although Lefebvre reports to Gerard Binoche regarding Kremlin's activities, he manages the daily internal operations of Kremlin on his own.

As a parent corporation, SKM has the right to inspect the books, operations and premises of Kremlin, but Kremlin maintains separate corporate records, tax returns and financial statements. Kremlin only pays for goods purchased and makes no other payments, such as royalties or dividends, to SKM. Kremlin has never received credit from SKM and has sufficient capital to run its own business independently. As a result of the parent-subsidiary relationship, SKM permits Kremlin to use a variation of SKM's trademark in its resale of paint spraying equipment in the United States, although there is no assignment of rights in the mark. Also, SKM supplies some promotional material to Kremlin.

Aside from SKM's parent relationship with Kremlin, SKM has no other direct contact with Illinois. SKM does not maintain any showrooms, warehouses, offices or branches in Illinois. The French corporation does not own or lease any real or personal property within the state. It is not licensed to do business in Illinois and has not solicited or promoted business here. SKM maintains no bank accounts in Illinois and it has never obtained or extended credit within the state. Furthermore, SKM makes no tax payments, has no telephone listing or mailing address, and insures no risks in Illinois. SKM has not appointed an agent for service of process in Illinois.

This case presents the following four issues: (1) whether SKM's parent-subsidiary relationship with Kremlin provides a basis for exerting jurisdiction over SKM; (2) whether the Illinois long-arm statute permits jurisdiction over SKM; (3) whether SKM could be said to be "doing business" in Illinois; and (4) whether personal jurisdiction over SKM complies with constitutional due process.

## II. Parent-Subsidiary Relationship

The Supreme Court in *Cannon Manufacturing v. Cudahy Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), first stated that a parent corporation must engage in more than a normal parent-subsidiary relationship to be amenable to suit in the jurisdiction where its subsidiary is located.[2] The *Cannon* Court held that the subsidiary was an independent corporate entity, despite the fact that the parent owned all stock and

---

1. The record does not make clear in what capacity Gerard Binoche is employed by SKM.

2. In *Cannon,* an Alabama subsidiary of a Maine corporation was located in North Carolina.

The Alabama subsidiary purchased goods from the defendant-parent corporation, although the purchased goods were shipped directly from the parent corporation to the dealers.

dominated its subsidiary, because separate books were kept and transactions between the two companies were represented in the ledgers as though they were separate corporations. 267 U.S. at 335, 45 S.Ct. at 251. The Supreme Court found that "corporate separation, though perhaps merely formal, was real." 267 U.S. at 337, 45 S.Ct. at 251. Under *Cannon,* where a parent corporation is shown to be separate from its subsidiary, personal jurisdiction over the subsidiary does not equal personal jurisdiction over the parent.

■ The *Cannon* rationale has generated several factors to be considered in determining whether a parent corporation is sufficiently separate from its subsidiary for jurisdictional purposes. Such factors include whether the parent arranges financing for and capitalization of the subsidiary; whether separate books, tax returns and financial statements are kept; whether officers or directors are the same; whether the parent holds its subsidiary out as an agent; the method of payment made to the parent by the subsidiary; and how much control is exerted by the parent over the daily affairs of its subsidiary. 2 *Moore's Federal Practice* ¶ 4.25[6] at 4–275–276.

■ An application of these factors to the present case indicates that SKM and Kremlin are clearly two separate corporations. Kremlin retains sufficient capital and does not rely on financing from SKM to keep its business in operation. As in *Cannon,* all corporate books, tax returns and financial statements are separately maintained by the two corporations. There are no common officers or directors serving both SKM and Kremlin, and the record does not indicate that SKM holds Kremlin out as its agent.[3] Kremlin pays SKM for purchased goods by depositing letters of credit in a French bank located in Chicago, Illinois; the bank then transfers the funds to SKM's bank in France. Furthermore, there is no evidence in the record that SKM exhibited any amount of control over Kremlin's internal affairs.[4]

From the facts stated above, the court finds that Kremlin acts as an independent corporate entity free from domination by its parent corporation SKM. For that reason, personal jurisdiction over SKM cannot be based on the parent-subsidiary relationship with Kremlin.

### III. Illinois Long-Arm Statute

Some courts have criticized the *Cannon* analysis, preferring to rely solely upon state long-arm statutes and constitutional due process standards to determine whether jurisdiction exists over a nonresident parent corporation.[5] The Illinois long-arm statute, Ill.Rev.Stat.1977, ch. 110, par. 17(1)(b), permits personal jurisdiction over nonresident defendants if the defendant has committed a tortious act within the state.[6] Plaintiff

**3.** The fact that Gerard Binoche, Chairman of the Board of Kremlin, is the son of the president of SKM, is not enough to convince this court that the two corporations should be treated as a single corporate entity for purposes of jurisdiction. Numerous authorities cited by defendant demonstrate that common directors and officers of a parent and its subsidiary is not enough, by itself, to confer jurisdiction over a nonresident parent corporation. *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 205, 56 Ill.Dec. 14, 427 N.E.2d 94 (1980) (subsidiary must act as mere instrumentality of parent before separate corporate entity will be disregarded).

**4.** The record fails to show in what way, if any, SKM controls the affairs of its subsidiary in areas of distribution, marketing, or financing. See *Kramer Motors, Inc. v. British Layland, Ltd.,* 628 F.2d 1175, 1178 (9th Cir.1980) (foreign parent's approval of domestic subsidiary's marketing scheme insufficient to establish personal jurisdiction).

**5.** See *Hitt v. Nissan Motor Limited,* 399 F.Supp. 838, 849 (S.D.Fla.1975). *Cannon* is criticized on grounds that it encourages parent corporations to insulate themselves from distant litigation by maintaining "merely formal" separations from their subsidiaries.

**6.** Section 17(1)(a) of the long-arm statute permits personal jurisdiction over nonresident defendants who transact business in Illinois. Although SKM could be said to have transacted business here by purchasing component parts from Kremlin, the present cause of action does not arise out of that activity. Apart from SKM's purchase of component parts from Kremlin, SKM has not transacted business in Illinois because all performance of contracts between the two corporations occurred in France.

argues that *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975), controls the present case. The Seventh Circuit in *Honeywell,* on facts arguably similar to the ones presented here,[7] held that jurisdiction over a German corporation was proper because defendant's alleged active inducement to infringe constituted a tortious act. Although the plaintiff in *Honeywell* did not assert that defendant performed any specific act within the state, the Seventh Circuit nevertheless found that jurisdiction existed, citing *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961).[8] If *Honeywell* remains viable after the Illinois Supreme Court's recent reinterpretation of the long-arm statute in *Green v. Advance Ross Electronics,* 86 Ill.2d 431, 436, 56 Ill. Dec. 657, 427 N.E.2d 1203 (1981),[9] then plaintiff does have a strong argument that jurisdiction attaches against SKM for the commission of a tort in Illinois. The viability of *Honeywell* presents a close. question which need not be resolved here because personal jurisdiction exists over SKM under the doctrine of doing business in Illinois.

### IV. Doing Business in Illinois

The Illinois Supreme Court recently stated that personal jurisdiction is proper over a foreign corporation, aside from the long-arm statute, if the corporation is "doing business" in Illinois. *Cook Associates, Inc. v. Lexington United Corporation,* 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981). The rationale is that a foreign corporation which conducts business within a state, receiving economic benefits from its activity, has constructively consented to being sued there. *Id.*[10] Although there is no "all-inclusive test" for determining what constitutes "doing business" in Illinois, the Court in *Cook* emphasized the importance of the foreign corporation's regular activity within the state. See *Connelly v. Uniroyal, Inc.,* 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979). Jurisdiction over the defendant in *Connelly* was proper because "defendant's products regularly entered Illinois in substantial amounts." 87 Ill.2d 190, 202, 57 Ill.Dec. 730, 429 N.E.2d 847.[11]

Although the Illinois Supreme Court in *Cook* declined to find jurisdiction over defendant, as there was a conspicuous absence of regular activity by defendant, the Court's "doing business" rationale is applicable to the present case. The evidence establishes that Kremlin purchases a large percentage of its paint spraying equipment from SKM, and is presently the only source of SKM products in the United States. For two years, SKM's products have regularly entered Illinois through its subsidiary Kremlin. SKM obviously receives substantial revenue and economic benefit from Kremlin's sales in Illinois. Because SKM's

---

7. *Honeywell* also involved a patent infringement suit. The defendant, a German corporation, after failing to negotiate a license from the patent owner of electronic flash units, entered into an exclusive distribution contract with an American company in an effort to distribute the flash units in the United States. Under the terms of the distribution contract, the German corporation agreed to indemnify and hold the American distributor harmless in the event of a patent infringement suit. The Seventh Circuit's jurisdictional finding was based largely upon defendant's active inducement, supported by the record, to infringe upon plaintiff's patent.

8. In *Gray,* jurisdiction existed over defendant whose malfunctioning valve manufactured outside the state, was attached to a water heater that exploded in Illinois causing injury to plaintiff.

9. In *Green v. Advance Ross Electronics,* the Illinois Supreme Court stated that "the boundaries or limits of our statute are not to be equated with the due process 'minimum contacts' standard.... A statute worded in the way ours is should have a fixed meaning without regard to the changing concepts of due process." The Court's interpretation narrowed the scope of the long-arm statute.

10. Under the doing business doctrine, a nonresident defendant is amenable to service as a resident corporation under § 13.3 of the Civil Practice Act, Ill.Rev.Stat.1977, ch. 110.

11. See also *Braband v. Beech Aircraft Corp.,* 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1978) (defendant manufacturer was doing business in Illinois because of its contractual relationship with an Illinois distributor authorized to sell and service defendant's products within the state).

products regularly come into the state in large numbers—a contention SKM has not disputed—SKM can be said to be "doing business" here for purposes of jurisdiction.

SKM maintains that it only has indirect contact with Illinois, and that Kremlin is solely responsible for the sale of SKM products in Illinois. SKM's contacts with Illinois are indirect, but, as cited in *Connelly, supra,* 75 Ill.2d at 405, 27 Ill.Dec. 343, 389 N.E.2d 155:

> A manufacturer's economic relationship with a state does not necessarily differ in substance, nor should its amenability differ, depending on whether it deals directly or indirectly with residents of the State. *Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 902 [80 Cal.Rptr. 113, 458 P.2d 57] (1969).

SKM's economic relationship with Illinois is both substantial and continuous. In addition, by establishing its subsidiary in Illinois, SKM's intent to market its products here is obvious. Because SKM receives substantial economic benefit from its regular activity within the state, it can be said to be "doing business" here even though its dealings here are indirect.

### V. Constitutional Due Process

An exercise of personal jurisdiction over a nonresident defendant complies with constitutional due process as long as the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). SKM could reasonably expect that it might face litigation in Illinois as that is where its subsidiary is located and where its products are sold.

Furthermore, although SKM has indirect contact with Illinois, personal jurisdiction will not fail over a manufacturer who deals indirectly with the forum state. As the Supreme Court stated in *World-Wide Volkswagen:*

> [I]f the sale of a product of a manufacturer ... is not simply an isolated occurrence but arises from the efforts of the manufacturer ... to serve directly or indirectly, the market for its product ... it is not unreasonable to subject it to suit in one of those states.... 444 U.S. at 297, 100 S.Ct. at 567.[12]

The record indicates that the sale of SKM products in Illinois is not an isolated occurrence, but, rather, is a deliberate attempt by SKM to market its products in the United States. SKM can therefore be said to have "availed itself of the privileges and benefits" of Illinois law, *Hanson v. Denckla,* 357 U.S. 235, 253 (1958), making an exercise of personal jurisdiction over SKM reasonable under due process analysis.

### VI. Conclusion

Despite the degree of corporate separateness between SKM and Kremlin, personal jurisdiction over SKM is proper as SKM can be said to be doing business in Illinois. Accordingly, SKM's motion to dismiss this case for lack of personal jurisdiction is denied.

---

**12.** The Supreme Court in *World-Wide Volkswagen* held that an automobile distributor and retailer, both New York corporations, were not subject to Oklahoma jurisdiction because the distributor marketed its vehicles in a limited region spanning three states in the east and the retailer's place of business was in New York. The Court emphasized that the "mere fortuitous circumstance" of one of defendants' New York customer's having an accident in Oklahoma did not constitute sufficient "minimum contacts" by the distributor and retailer with Oklahoma. By way of contrast, the foreign manufacturer, which sold its vehicles throughout the United States, did not contest Oklahoma's exercise of personal jurisdiction.