GLEN MFG. INC., Plaintiff,

v.

FULTON INDUSTRIES, INC., and Bell Industries, Inc., Defendants.

Civ. A. 65 C 1352.

United States District Court
N. D. Illinois, E. D.

Oct. 22, 1968.

Hofgren, Wegner, Allen Stellman & McCord, Chicago, Ill., for plaintiff.

Joseph M. Solon, Samuel W. Kipnis, Chicago, Ill., for defendant.

LYNCH, District Judge.

## FINDINGS OF FACT

1. Plaintiff, Glen Mfg. Inc., is a Wisconsin corporation having its principal office and place of business in Milwaukee, Wisconsin. Glen Mfg. Inc. was formerly known as Rhea Manufacturing Company.

2. Defendant, Fulton Industries, Inc., is a Georgia corporation having a place of business and doing business in the Northern District of Illinois, Eastern Division.

3. Defendant, Bell Industries, Inc., is a wholly owned subsidiary of Defendant, Fulton Industries, Inc., and is a Delaware corporation having a place of business and doing business in the Northern District of Illinois, Eastern Division. Defendant, Bell Industries, Inc., was originally organized in 1963 as Belindco, Inc.

4. There is diversity of citizenship, and the amount in controversy exceeds Ten Thousand Dollars ($10,000.00).

5. On September 22, 1953, United States Letters Patent No. 2,652,874 entitled "Covering for Toilet Flush Tanks" (known generally as toilet tank covers), issued to Plaintiff, Glen Mfg. Inc. (then Rhea Manufacturing Company), upon an application filed by Alice E. Armstrong. The application for the Armstrong patent was originally filed on September 25,

1948, as Serial No. 51,271. The Patent Office did not grant a patent on this application. Applicant then filed a copending continuation application, Serial No. 192,966, on October 30, 1950, which resulted in the issuance of said patent 2,652,874.

6. Plaintiff notified the trade that the Armstrong patent No. 2,652,874 had issued.

7. Some time in 1953 Bell Textile Company began to manufacture and sell tank covers.

8. On May 11, 1954, the Plaintiff filed suit against Spiegel, Inc. in the United States District Court for the Eastern District of Wisconsin, Civil Action No. 6295, charging infringement of said Armstrong patent No. 2,652,874, by reason of its sale of toilet tank covers which were purchased from a manufacturer of same.

9. On June 1, 1954, the Plaintiff filed suit against Gimbel Brothers, Inc. in the United States District Court for the Eastern District of Wisconsin, Civil Action No. 6317, charging infringement of said Armstrong patent No. 2,652,874, by reason of its sale of toilet tank covers which were purchased from a manufacturer of same.

10. On July 23, 1954, the Plaintiff filed suit against Sears, Roebuck & Co. in the United States District Court for the Eastern District of Wisconsin, Civil Action No. 6373, charging infringement of said Armstrong patent No. 2,652,874.

11. On August 31, 1954, the suit against Spiegel, Inc. Civil Action No. 6295, was dismissed without prejudice.

12. On November 12, 1954, the suit against Gimbel Brothers, Inc., including the counterclaim filed by Gimbel Brothers, Inc., Civil Action No. 6317, was dismissed without prejudice.

13. Since Bell Textile Company was the manufacturer of the tank covers sold by Sears, Roebuck & Co., it had been defending Civil Action No. 6373 on behalf of Sears, and on or about May 19, 1958, on stipulation of the parties, Bell Textile Company was substituted for the Defendant, Sears, Roebuck & Co., said Bell Textile Company having voluntarily filed its appearance, and the Complaint was dismissed with prejudice and without costs as to the Defendant, Sears, Roebuck & Co. On June 16, 1958, the Plaintiff, Glen Mfg. Inc. (then Rhea Manufacturing Company), filed an Amended Complaint, pursuant to the pretrial order entered by the Court on June 9, 1958, which Amended Complaint alleged in part as follows:

"The defendant, BELL TEXTILE CO., has waived venue and submitted to the jurisdiction of this court and has admitted making and selling in the United States, and since the grant of said Letters Patent, covers for toilet flush tanks exemplified by toilet tank covers identified as Exhibits 1, 2 and 3 in a stipulation entered into between the parties hereto on June 9, 1958, each of which said toilet tank covers infringes said Letters Patent."

Further proceedings were had in this case and on May 11, 1959 a Consent Decree holding the Armstrong patent valid and infringed and enjoining Defendant, Bell Textile Company, from further infringement was entered in said cause.

Defendants in this case were never parties nor did they participate in any way in said Civil Action No. 6373 in the United States District Court for the Eastern District of Wisconsin.

14. Uncertified copies of the pleadings filed by Rhea Manufacturing Company in the United States District Court for the Eastern District of Wisconsin in Civil Action No. 6373 were offered in evidence by both parties with the same force and effect as if certified.

15. A license agreement was prepared by counsel for the Plaintiff, Glen Mfg. Inc. (then Rhea Manufacturing Company) and on May 6, 1959 said license agreement was transmitted to counsel for the said Bell Textile Company, in New York, New York.

16. Bell Textile Company executed the license agreement as of May 6, 1959,

in New York, New York, and returned it to Plaintiff.

17. The license agreement was transmitted to patent counsel for Bell Textile Company along with a letter, dated May 6, 1959, which stated in part

" * * * the agreement requires the royalty payment on every toilet tank cover manufactured or sold by Bell its subsidiaries, etc., so that there will be no future argument over whether a particular model is within or without the terms of the claim."

18. Said executed agreement was accompanied by a letter of May 7, 1959 from Murray Belsky, President of Bell Textile Company, to Rhea Manufacturing Company.

19. Paragraph (4) of the license agreement states as follows:

"(4) Contemporaneously with the execution of this agreement, BELL has paid to Rhea the sum of Four Thousand Dollars ($4,000.00) and BELL further agrees to pay to Rhea a royalty of ten cents (10 cents) on each toilet tank cover made or sold by BELL, by its subsidiaries, and by any corporation controlled by BELL, after the date of this agreement, for the full term thereof."

20. The letter of clarification, referred to in paragraph 18, sent by Bell Textile Company to Rhea Manufacturing Company on May 7, 1959, and accepted by Rhea on May 12, 1959 contained the following reference to paragraph (4) of the agreement:

"Therefore, by this letter of clarification of the license it is to be understood that only one payment of royalty will be made by Bell, its subsidiaries, or any corporation controlled or related to Bell on any single toilet tank cover sold under the agreement."

21. Subsequently, on May 10, 1960 and on November 8, 1961, said license agreement was amended to reduce the royalties payable thereunder.

22. The amendment dated November 8, 1961 also added the following to paragraph two (2) of the agreement:

"It is understood that RHEA will not exercise its option set forth in this paragraph unreasonably or without justification."

23. Bell Textile Company, the licensee named in said license agreement of May 6, 1959, subsequent to said date became Bell Industries, Inc., a Delaware corporation formed in 1962.

24. From May 6, 1959 until Bell Industries, Inc., (Delaware 1962) assigned said license agreement on November 1, 1963 to Belindco, Inc. (now by change of name Bell Industries, Inc., (Delaware 1963) a Defendant herein), Bell Textile Company and its successor Bell Industries, Inc. (Delaware 1962) manufactured toilet tank covers and paid royalties to the Plaintiff on all tank covers manufactured and sold during that period.

25. On November 1, 1963, Bell Industries, Inc. (Delaware 1962) sold certain assets to Belindco, Inc., including said license agreement which was assigned to the said Belindco, Inc., and which assignment was evidenced by a document in writing dated November 1, 1963, and the Plaintiff consented, in writing, to said assignment.

26. Glen Mfg. Inc., plaintiff herein, agreed to the assignment "upon the understanding that Bell Industries will not continue in the manufacture or sale of toilet tank covers, and that in the event it or any successors enter into such business in the future, the terms of the license agreement will be automatically reapplicable to Bell or its successor."

27. Shortly after November 1, 1963, Belindco, Inc. became, by change of name, Bell Industries, Inc. (Delaware 1963), a Defendant herein.

28. Since November 1, 1963, the Defendant, Bell Industries, Inc., has manufactured and sold toilet tank covers and Defendants have paid no royalties to Plaintiff.

29. On July 24, 1964, the Defendant, Bell Industries, Inc., having refused to pay royalties on the ground that none of its tank covers were covered by the claim of the Armstrong patent, Plaintiff

notified Defendant, Bell Industries, Inc., in writing, pursuant to paragraph (2) of the amendment of November 8, 1961, that the royalty rate on toilet tank covers would, after sixty (60) days from the date of such notice, i. e. September 22, 1964, be returned to the original ten cents (10 cents) per cover rate from the amended agreement rate of five cents (5 cents) per tank cover.

30. Since November 1, 1963, the Defendant, Bell Industries, Inc., has manufactured and sold four basic types of toilet tank covers, which it has identified as models 1009; 1291; 3054 and 3223.

31. Toilet tank covers manufactured and sold by Bell Industries, Inc., bearing model numbers 1009, 1291 and 3054, are identical with the toilet tank covers bearing the same model numbers manufactured and sold by the original licensee, Bell Textile Company, which were found to infringe the licensed patent No. 625,-874 in a Consent Decree entered in Civil Action No. 6373 in the United States District Court for the Eastern District of Wisconsin. Tank cover model 3223 differs from model 3054 in that the side panels of the cover are somewhat wider thereby covering a greater portion of the sides of the toilet tank.

32. After May 6, 1959, the Plaintiff entered into other license agreements granting licenses under said Armstrong patent No. 2,652,874, with royalty provisions substantially the same as stated in the original license to Bell Textile Company. The licensees are: Glenoit Mills, Inc., Janesville, Wisconsin; McAuley Enterprises, Inc., New York, New York; Norwood Mills, Inc., Janesville, Wisconsin; Perfect Fit Industries, et al., New York, New York; Queen Chenille Co., Dalton, Georgia; Tennessee Tufting Company, Nashville, Tennessee; and Windsor Textile Company, Inc., Chicago, Illinois.

33. At all times since May 6, 1959, the Plaintiff has construed the royalty provisions of each of said licenses to require payment by said licensees on all tank covers made or sold by each of said licensees irrespective of whether or not said toilet tank covers come within the scope of the claim of the Armstrong patent No. 2,652,874.

34. During the period from January 1, 1964, through September 30, 1967, the Defendant, Bell Industries, Inc. (formerly Belindco, Inc.), has manufactured and sold quantities of each of said types of toilet tank covers, models 1009, 1291, 3054 and 3223, as follows:

| Model Number | Quantity Manufactured and Sold | |
| --- | --- | --- |
| | From Jan. 1, 1964 to Sept. 22, 1964 | From Sept. 22, 1964 to Sept. 30, 1967 |
| 1009 | 99,581 | 496,364 |
| 1291 | 2,950 | 13,680 |
| 3054 | 82,636 | 301,240 |
| 3223 | 25,985 | 75,937 |
| Total | 211,152 | 887,221 |

35. Of the total number of toilet tank covers manufactured and sold by the Defendant, Bell Industries, Inc., during the period from January 1, 1964 to September 22, 1964, said Defendant sold 110,148 toilet tank covers to Sears, Roebuck & Co.

36. Of the total number of toilet tank covers manufactured and sold by the Defendant, Bell Industries, Inc., during the period from September 22, 1964 to September 30, 1967, said Defendant sold 229,437 toilet tank covers to Sears, Roebuck & Co.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and over the subject matter of this suit. Venue is properly laid in this District.

2. Plaintiff has title to United States Letters Patent No. 2,652,874.

3. The patent referred to in paragraph two (2) is a valid patent.

4. Plaintiff has sustained its burden of proving the alleged breach of contract by defendant. The defendant has not maintained the burden of proving the essential facts of its affirmative antitrust defense.

5. The assignment of the license agreement from the original licensee to the defendant herein was a specific assignment of said agreement and not a novation.

6. The word "each" in the license agreement is to be construed as meaning all toilet tank covers produced and sold by defendant-licensee and not merely such covers which come within the terms of the Armstrong patent.

7. In licensing the use of patents to one engaged in a related enterprise, it is not a per se misuse to measure the consideration by a percentage of the licensee's sales.

8. Defendant, Fulton Industries, is a proper party to this action.

9. Plaintiff's exercise of its option to reinstate the ten cents (10 cents) per cover royalty rate solely because defendants failed to pay royalties due to a bona fide disagreement as to the interpretation of the license agreement, was not a reasonable and just exercise thereof as provided for in the amended license agreement.

10. Plaintiff has not entered into a license agreement with Virginia Crafts.

11. Defendants Bell Industries, Inc. and Fulton Industries, Inc. are liable to plaintiff, Glen Mfg. Co., for a royalty of five cents (5 cents) on each toilet tank cover produced and sold by defendant Bell Industries, Inc., since November 1, 1963.

12. Every finding of fact deemed a conclusion of law is hereby adopted as a conclusion of law.