ROBB CONTAINER CORPORATION,
Plaintiff,

v.

SHO–ME COMPANY, Elmer C. Lynn,
Marco Products, Inc., and Robert Beck-
with, Jr., d/b/a General Container Tech-
nology and General Container of Michi-
gan, Defendants.

Elmer C. LYNN and Sho-Me Company,
Counter-plaintiffs,

v.

ROBB CONTAINER CORPORATION,
Counter-defendants.

No. 82 C 6313.

United States District Court,
N.D. Illinois, E.D.

June 23, 1983.

On Motion to Modify Preliminary
Injunction July 6, 1983.

Paul G. Juettner, Thomas R. Juettner, Michael Piontek, Gary, Juettner & Pyle, Chicago, Ill., for plaintiff.

Robert M. Ward, Cook, Wetzel & Egan, Chicago, Ill., James D. Hall, Oltch, Knoblock & Hall, South Bend, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Robb Container Corporation ("Robb") sued Sho-Me Company ("Sho-Me"), Elmer C. Lynn ("Lynn"), Marco Products, Inc. ("Marco"), Robert Beckwith, Jr. ("Beckwith") and General Packaging Technologies, Inc. ("GPT") for unfair competition, passing-off, trade disparagement, breach of contract, breach of fiduciary duty, common law trademark infringement, deceptive trade practices and conspiracy to interfere with contractual relations. Jurisdiction is asserted pursuant to 28 U.S.C. § 1332(a), and the amount in controversy is alleged to exceed $10,000 exclusive of interest and costs.[1] Defendants Lynn and Sho-Me filed a counterclaim for breach of contract, trade disparagement, deceptive trade practices, unfair competition, conspiracy and various federal antitrust violations. Presently pending before the Court are (1) Robb's motion for a preliminary injunction; (2) defendants Marco, Beckwith and GPT's motion to dismiss or, in the alternative, for summary judgment; and (3) Robb's motion to dismiss or strike Lynn and Sho-Me's counterclaim. For reasons set forth below, Marco, Beckwith and GPT's motion to dismiss or for summary judgment is denied; Robb's motion for a preliminary injunction is granted; and Robb's motion to dismiss or strike is granted in part and denied in part.

### Facts

Robb, a Delaware corporation with its principal place of business in this district, manufactures and sells blow-molded plastic containers. In 1975, defendant Lynn, a res-

---

1. Venue is asserted pursuant to 28 U.S.C. § 1391(a), which provides that:

 A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

Jurisdiction in this matter is based upon diversity of citizenship, and Robb as plaintiff resides in this district. Venue in this district is therefore proper, and insofar as defendants' motion to dismiss asserted that venue was improper, it is denied. It is so ordered.

ident of Iowa, while representing Robb as a sales agent or manufacturer's representative, designed a container for which he and a partner, Leonard Slaughter, received a design patent, No. D246,029. This patent was granted on October 11, 1977, for fourteen years. Robb, Lynn and Slaughter had previously entered into two documents, a contract and an assignment concerning the container, which is known as Robb style 70105 container or the Canister Pack container, on June 29, 1976. Lynn and Slaughter were partners in Sho-Me Sales Agency, and they allegedly assigned to Robb all rights, title and interest in the container, its design, as well as the then pending design patent application. In the fall of 1980, the Sho-Me Agency partnership ended. Lynn subsequently incorporated his business under the name Sho-Me Company, which is a resident of Iowa and a defendant in this case. The aforementioned contract was terminated, and Slaughter was released from obligations to Robb; however, the patent assignment contract was not terminated, and Robb retained Lynn as a manufacturer's representative for container style 70105. In the fall of 1981, Robb alleges that Lynn, Beckwith, a resident of Indiana, and other individual co-conspirators formed defendant GPT, a resident of Indiana. GPT through defendant Marco, a resident of Michigan, engaged a mold maker to make two molds for the manufacturer of a container which is alleged to be virtually identical to Robb's style 70105 container. Marco subsequently began producing a container known as GPT–60. Lynn is the vice-president, secretary, director and shareholder in GPT. Beckwith is president, treasurer, director and shareholder in GPT.

## I.

### Defendants Marco, Beckwith and GPT's Motion to Dismiss or for Summary Judgment

■ The above defendants have moved (1) to dismiss Robb's complaint for lack of personal jurisdiction; (2) to dismiss Counts III and IV of the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); and (3) for summary judgment. We will consider these arguments in turn, beginning with defendants' motion to dismiss for lack of personal jurisdiction. Marco, Beckwith and GPT argue that this Court cannot exercise personal jurisdiction over them, because they lack sufficient or minimal contacts with the State of Illinois to satisfy the requirements of due process. When a non-resident defendant challenges a court's personal jurisdiction, the burden of proving jurisdiction rests with the plaintiff. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). This burden, however, is met by a *prima facie* showing that jurisdiction is conferred by the long-arm statute. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971). And, for this purpose, any conflicts in affidavits or pleadings submitted by the parties must be resolved in plaintiff's favor. *Neiman v. Rudolph Woolf & Co.*, 619 F.2d 1189, 1190 (7th Cir.1980), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980); *United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co.*, 495 F.2d 1127, 1128 (7th Cir.1974). Thus, where the defendants' affidavits vary from those of Robb, for purposes of this motion, we will rely upon Robb's.

### A.

■ When federal jurisdiction rests upon diversity of citizenship, as in the instant case, *in personam* jurisdiction is determined in accordance with the law of the forum state. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1175 (7th Cir. 1971); *Sullair Leasing Corp. v. Woodland*, No. 82–3442 at 2 (N.D.Ill. December 29, 1982). Where a foreign corporation does business of a sufficiently substantial nature in the forum state, the state may entertain suit against the foreign corporation notwithstanding the fact that a particular cause of action arose from activities distinct from conduct within the state. *Lindley v. St. Louis-San Francisco Railway Co.*, 407 F.2d 639, 640 (7th Cir.1968); *Bodine's, Inc.*

*v. Sunny-O, Inc.,* 494 F.Supp. 1279, 1281 (N.D.Ill.1980). In the event that a foreign corporation is not "doing business" in Illinois, courts look to the Illinois Long-Arm Statute, which provides, in pertinent part, that

(a) Any person, whether or not a citizen or resident of this State who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

\* \* \* \* \* \*

■ Until recently it was assumed that the Illinois legislature enacted its long-arm statute with the intention of providing a means of asserting jurisdiction over non-residents to the extent permitted by federal due process standards. *Braband v. Beech Aircraft Corp.,* 51 Ill.App.3d 296, 9 Ill.Dec. 684, 367 N.E.2d 118 (1977), *aff'd,* 72 Ill.2d 548, 21 Ill.Dec. 888, 382 N.E.2d 252 (1979), *cert. denied,* 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979); *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673, 679 (1957); *Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117 (N.E.Ill.1980). But recently the Illinois Supreme Court held that its interpretation of the state's long-arm statute is not to be equated with changing federal standards of due process. *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981); *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981). After *Cook* and *Green,* it is clear that even if the proposed exercise of personal jurisdiction meets federal constitutional requirements of due process, it may not be authorized under the stricter Illinois statutory requirement. *State Security Insurance Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94 (N.D.Ill.1981).

The relevant jurisdictional facts are as follows.

■ According to Robb's affidavits, GPT sold thirty percent of its sales of the GPT–60 container in Illinois, over 57,000 containers. Beckwith is president of GPT and admitted running its daily operations in his deposition. He also met with General Foods in Chicago in an effort to sell it containers, and he represents several Illinois firms. Marco has shipped the GPT–60 container into Illinois and has accepted and shipped several products other than the GPT–60 container to Illinois customers. Moreover, it buys materials from Illinois suppliers. The above activities indicate a continuous and systematic course of business in Illinois on the part of all three defendants which is sufficient to allow jurisdiction to attach. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Braband v. Beech Aircraft Corp.,* 51 Ill.App.3d 296, 298, 9 Ill.Dec. 684, 686, 367 N.E.2d 118, 120 (1977). Federal due process standards, which require that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there," *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), are not offended by the exercise of jurisdiction over these defendants.

Furthermore, the Illinois Long-Arm Statute provides yet another basis for the assumption of jurisdiction in this matter, for if a corporation transacts business within Illinois and a cause of action arises from that transaction, Illinois will have jurisdiction. *Braband v. Beech Aircraft Corp.,* 51 Ill.App.3d 296, 298, 9 Ill.Dec. 684, 686, 367 N.E.2d 118, 120 (1977). All the defendants have been involved in shipping the GPT–60 container, which is the basis of the instant lawsuit, into Illinois. It appears that defendants manufactured the GPT–60 containers with the intent that it be distributed in Illinois; it is therefore irrelevant that someone other than one of these defendants, namely Lynn and Sho-Me, shipped the container into the state. *Bodine's, Inc. v.*

*Sunny-O, Inc.,* 494 F.Supp. 1279, 1282 (N.D. Ill.1980); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 442, 176 N.E.2d 761, 766 (1961). Accordingly, we hold that the exercise of personal jurisdiction over Marco, Beckwith and GPT would not offend due process.

### B.

▮ Defendants have also moved to dismiss Counts III and IV of Robb's complaint. Motions to dismiss should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts supporting his or her claim entitling him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In Count III, Robb claims that it acquired by assignment contract the entire right, title and interest in the container designed by Lynn, and that Lynn agreed that Robb was to have exclusive right to make containers of such design. Robb further alleges that Lynn, Sho-Me and GPT breached this contract by causing the GPT–60 container to be manufactured and distributed. In support of their motion to dismiss, defendants argue that there is no precedent for the proposition that the assignment of a patent in itself imposes a duty on the part of the assignor not to make unauthorized use of the patented design. Rather, defendants seem to argue that the appropriate cause of action would be for patent infringement and not breach of contract. They add that the assignment contract presently at issue has been terminated. While Robb's amended complaint states that a contract between it, Lynn and Slaughter (Exhibit B to the amended complaint) was terminated in September of 1980, Robb points to a second contract (Exhibit C to the amended complaint), which states that Robb shall hold the patent to the end of the term for which the patent was granted. We thus conclude that the assignment of patent to Robb remains in effect.

▮ As to GPT's claim that the assignment does not impose a duty upon it not to make unauthorized use of the patented design, we begin by observing that 35 U.S.C. § 261 explicitly provides for the assignment of patents and patent applications. Despite the significant federal interest in patent matters, there is no exclusive federal jurisdiction over *questions* arising under the patent laws; only *cases* which arise under the patent laws are subject to federal jurisdiction. *Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897); *Milprint v. Curwood, Inc.,* 562 F.2d 418, 420 (7th Cir.1977).[2] Count III of Robb's complaint, which alleges that Lynn, Sho-Me and GPT breached the assignment contract among them, sounds in contract. The terms of the assignment contract presently at issue transfer to Robb the full and exclusive right to the container; no explicit mention is made of any duty not to make an unauthorized use of the design. Courts, however, have recognized a cause of action for breach of contract in cases involving patents. *E.g., Milprint, Inc. v. Curwood, Inc.,* 562 F.2d 418 (7th Cir.1977); *United Lens Corp. v. Doray Lamp Co.,* 93 F.2d 969, 973 (7th Cir.1937); *Glen Mfg. Co. v. Fulton Industries, Inc.,* 301 F.Supp. 649, 653 (N.D. Ill.1968). One court declined to dismiss a complaint alleging breach of a licensing agreement, finding an implied duty to exercise reasonable efforts in the exploitation of a patented device under New Jersey law. *Bellows v. E.R. Squibb & Sons, Inc.,* 362 F.Supp. 778 (N.D.Ill.1973). And in *Massillon-Cleveland-Akron Sign Co. v. Golden State Advertising Co.,* 444 F.2d 425 (9th Cir.1971), *cert. denied,* 404 U.S. 873, 92 S.Ct.

**2.** Examination of 28 U.S.C. § 1338 confirms this interpretation:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

100, 30 L.Ed.2d 117 (1971), the court recognized a claim to enforce a contract concerning a patent which was entered into as part of a settlement agreement by declaring that "a valid patent is a prerequisite to recovery for inducing the breach of a contract not to infringe, as well as a prerequisite to recovery for the breach itself." [3] *Id.* at 428. We therefore decline to hold that Count III fails to state a claim upon which relief may be granted.

### C.

■ Count IV of Robb's amended complaint avers that Lynn, Sho-Me and GPT breached or caused the breach of Lynn and Sho-Me's fiduciary duties as a manufacturer's representative and sales agent of Robb, by making and selling their own competitive product. GPT's motion to dismiss Count IV disputes the existence of an agency relationship between Robb and Lynn. The existence of an agency relationship is a question of fact, and the party alleging such a relationship has the burden of proving it by a preponderance of the evidence. *Lazarus v. Pascucci,* 74 Ill.App.3d 633, 639, 30 Ill.Dec. 727, 732, 393 N.E.2d 1074, 1079 (1979). Dismissal of Count IV at the present stage of this litigation would thus be premature, as Robb may be able to prove the existence of an agency relationship between it and Lynn. We therefore deny defendants' motion to dismiss Count IV.

### D.

■ Finally, Marco, GPT and Beckwith have moved for summary judgment against Robb, maintaining that they have engaged in none of the conduct of which they are accused in Robb's complaint. In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge &*

*Structural Iron Workers, Local No. 1,* 603 F.2d 7, 10 (7th Cir.1979). While the non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.1961), it may not merely rely on its pleadings but rather must affirmatively set forth specific facts by affidavit or otherwise showing that there are issues that must be decided at trial in response to the moving party's assertions that no genuine issues of material fact exist. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). In response to defendants' motion, Robb has pointed to deposition testimony in an effort to dispute a number of the factual assertions defendants have made. It has also enumerated certain material factual issues, such as Lynn's relationship to Robb and GPT and the existence of a conspiracy among the defendants. Defendants have thus not met their burden of demonstrating the non-existence of material factual issues, and their motion for summary judgment is denied.

### II.

### *Robb's Motion for a Preliminary Injunction*

■ Robb seeks to enjoin defendants from, *inter alia,* manufacturing or distributing the GPT–60 container, from destroying any equipment used in the container's manufacture, from advertising or using materials bearing Robb's trademark Canister Pack and from disparaging or making any false statements about Robb. The purpose of a preliminary injunction is to preserve the status quo pending a trial. *American Hospital Association v. Harris,* 625 F.2d 1328, 1330 (7th Cir.1980). A decision to grant or deny injunctive relief lies within the discre-

---

**3.** We do not believe that *Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) renders invalid patent assignment contracts or lawsuits attempting to enforce such contracts. In holding that licensees were no longer es-

topped to challenge the validity of the licensed patent in a suit for royalties, the Court in *Lear* simply established that invalidity of a patent may be a defense to such a royalty suit. *Id.* at 674, 89 S.Ct. 1913.

tion of the district courts. *Wesley-Jensen Division of Schering Corp. v. Bausch & Lomb, Inc.,* 698 F.2d 862, 864 (7th Cir.1982). Our discretion, however, must be guided by consideration of four factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not enter;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*Id.; NFE International Ltd. v. General Resource Corp.,* 558 F.Supp. 1137, 1139 (N.D.Ill.1983). We shall consider in turn each of the above factors.

### A.

### *Likelihood of Success on the Merits*

 We have already decided that Robb's breach of contract claim in Count III states a cause of action and must now decide whether Robb's claim is likely to succeed. An examination of both the design drawings of Robb's Canister Pack container and the GPT–60 container and the containers themselves convinces us that Robb's claim for breach of contract may indeed succeed on the merits. The same conclusion is true for Robb's claim that GPT, Beckwith and Marco tortiously interfered with the assignment contract between Lynn, Sho-Me and Robb, for Robb may well be able to prove the essential elements of this tort.[4] Robb, moreover, has sufficiently shown a

common plan among the defendants to manufacture and distribute the GPT–60 container, thus making likely success on the merits of its claim that defendants conspired to breach the assignment contract between Lynn, Sho-Me and Robb. Conspiracies to breach and interfere with contractual relations are actionable in Illinois. *Blivas and Page, Inc. v. Klein,* 5 Ill.App.3d 280, 282 N.E.2d 210 (1972).

 A more difficult question is presented by the issue of the validity of Robb's patent. Defendants assert that Robb's patent is invalid, pursuant to *Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), as a defense to Robb's breach of assignment contract claim. Generally, parties seeking preliminary injunctions in patent cases have a formidable burden: to establish beyond question that the patent sued upon is valid and infringed. *E.g., Eli Lilly & Co. v. Generix Drug Sales,* 460 F.2d 1096, 1099 (5th Cir.1972); *Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.,* 443 F.2d 867, 871 (2d Cir.1971), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973). The instant matter, however, while it raises patent questions, is not a patent case; Robb does not seek to enjoin infringement of its patent, but rather, breaching of the patent assignment contract by Lynn, Sho-Me. The validity of the patent is clearly at issue, but as a defense to Robb's claim. We do not believe that the aforementioned burden faced by parties seeking preliminary injunctions against patent infringement applies to the instant breach of contract case. In any event, Robb has presented sufficient evidence in support of its motion to suggest that its breach of contract claim will withstand defendants' attack on the validity of the underlying patent.[5]

---

4. The essential elements comprising the tort of interference with contractual relations are: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the

other, caused by defendant's wrongful conduct; and (5) damages.
*Getschow v. Commonwealth Edison Co.,* 111 Ill.App.3d 522, 67 Ill.Dec. 343, 347, 444 N.E.2d 579, 583 (1982).

5. Robb submitted deposition testimony of a patent attorney who searched for relevant prior art not considered by the Patent Office Examiner in granting the patent, and who found none

Turning to Robb's charge of palming-off or passing-off, we conclude that it is likely to succeed on the merits. Passing-off involves the deception of a consumer as to the source of a product, *Clairol, Inc. v. Andrea Dumon, Inc.*, 14 Ill.App.3d 641, 650, 303 N.E.2d 177, 184 (1973). Robb has presented evidence that Lynn invoiced GPT–60 containers as Canister Pack containers and further asserts that Lynn substituted GPT–60 containers when customers requested Canister Pack containers. Robb also cites evidence that Lynn included Canister Pack sales literature in shipments of GPT–60 containers. It therefore appears that Robb's claim of passing-off is likely to succeed on the merits.

Count V of Robb's amended complaint alleges that Lynn, Sho-Me and GPT are infringing Robb's common law rights in the trademark Canister Pack by using it in passing-off their goods and in their sales literature. Under Illinois law, as well as federal law, the unauthorized use of another's valid trademark, which is likely to cause confusion as to the origin of the goods in question, may be enjoined. *National Football League Properties, Inc. v. Consumer Enterprises, Inc.*, 26 Ill.App.3d 814, 818, 327 N.E.2d 242, 245–46 (1975), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975). Robb in the instant case has elected to sue under the state cause of action. The test for trademark infringement is the likelihood of confusion of ordinary purchasers purchasing in the ordinary manner. *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands, Inc.*, 261 F.Supp. 200, 204 (N.D.Ill.1966), *aff'd*, 394 F.2d 833 (7th Cir.1967). *See also Filter Dynamics International, Inc. v. Astron Battery, Inc.*, 19 Ill.App.3d 299, 311 N.E.2d 386 (1974). In determining likelihood of confusion, several factors are relevant:

the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of current use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another.

*Helene Curtis Industries v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

In the instant case, consideration of several of the above factors indicates that confusion is likely; thus, Robb's claim may succeed on the merits. First, the marks used by Robb *and* Lynn and Sho-Me are identical; the two containers are similar as well, as is the manner of current use of the products. Robb has also submitted affidavits which suggest that there has been actual confusion of their Canister Pack container with the GPT–60 container among customers. Actual confusion is generally considered the best evidence of likelihood of confusion. *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 383 (7th Cir.1976), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). In summary, we believe that Robb has presented sufficient evidence of a likelihood of confusion between its product and the GPT–60 container to demonstrate that success on the merits for its common law trademark infringement claim is likely.

Finally, turning to Robb's charge of trade disparagement, Ill.Rev.Stat. ch. 121½ § 312 provides that:

[a] person engages in a deceptive trade practice when in the course of his business, vocation or occupation, he ... (8) disparages the goods; services or business of another by false or misleading representation of fact...

In support of this claim, Robb has presented the affidavit of one of its customers, Frank

which was more relevant. And Robb presents evidence suggesting that there has been acquiescence of the patent's validity, citing the fact that the patent has not previously been infringed nor challenged, and that the container received an industrial award and has been extremely successful. Defendants, moreover, have presented no prior art which might render the patent invalid.

E. Puch, which states that Lynn told him that Lynn was on Robb's Board of Directors, and that Robb was seeking to sell Canister Pack containers to customers larger than Puch's firm. According to Robb, neither statement is true. We agree with Robb that Lynn's statements may have implied that Robb lacked the production capacity to supply smaller businesses such as that run by Puch; indeed, Puch's affidavit declares that Lynn's statements left him with that impression. Thus, Robb has adequately demonstrated that success on the merits of its trade disparagement claim is likely. In summary, Robb has adduced sufficient evidence that its claims are likely to succeed on the merits, thus satisfying the initial prerequisite for injunctive relief.

### B.

#### Adequacy of Legal Remedies

■ In addition to deciding whether Robb is likely to succeed on the merits, we must determine whether Robb has an adequate remedy at law or will be irreparably harmed without an injunction. In cases involving trademark infringement, irreparable harm is readily found, since the victim is unable to control the nature and quality of the infringer's goods, and risks losing control of its reputation. *NFE International, Ltd. v. General Resource Corp.*, 558 F.Supp. 1137, 1141 (N.D.Ill.1983). A finding of irreparable harm is justified notwithstanding the absence of proof of any lost sales. *Wesley-Jensen Division of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir.1983). We also observe that the Uniform Deceptive Trade Practices Act specifically provides for injunctive relief against passing-off and disparagement, without proof of monetary damages or lost profits. Ill.Rev.Stat. ch. 121½ § 313. Courts have recognized the inadequacy of monetary relief in unfair competition cases, *e.g., National Lampoon, Inc. v. American Broadcasting Co.*, 376 F.Supp. 733, 750 (S.D. N.Y.1974), *aff'd*, 497 F.2d 1343 (2d Cir.1974). Therefore, we hold that Robb will experience irreparable harm if a preliminary injunction is not granted. The fact that an agreed temporary restraining order has been in effect during the pendency of these motions does not alter our conclusion.

### C.

#### The Public Interest

■ In considering requests for preliminary injunctive relief, courts must also decide whether the public interest will be disserved by issuance of an injunction. *Wesley-Jensen Division of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 868 (7th Cir.1983). Defendants conclusorily assert that an injunction would harm the public by undermining competition. We agree with Robb's contention that enjoining defendants from the use of the Canister Pack design and trademark will not prohibit them from manufacturing and distributing other types of containers. We also observe that insofar as confusion between the parties' containers is likely, the public interest favors issuance of an injunction against defendants. *NFE International, Ltd. v. General Resource Corp.*, 558 F.Supp. 1137, 1141 (N.D.Ill.1983).

### D.

#### Balancing the Hardships Faced by the Parties

■ The final factor that we must consider is whether the threatened injury to Robb outweighs the harm that an injunction might inflict upon the defendants. This calls for a relative balancing of hardships between Robb and defendants. Over the past six years, Robb has expended time, effort and funds in developing the Canister Pack container and a market for the container. Defendants have comparatively recently begun the manufacture and sale of the GPT–60 container. Defendants manufacture many other containers, other than the GPT–60, which represents a relatively small portion of their business. We find that the balance of equities thus favors Robb.

Accordingly, Robb's motion for a preliminary injunction is granted.[6] It is therefore ordered that defendants, and each of them, and their principals, officers, agents, servants, employees, attorneys and affiliated companies or enterprises, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined pending the entry of a final order or judgment on the merits in this case from:

(a) manufacturing, shipping, selling or otherwise disposing of, or advertising or offering for sale GPT–60 containers;

(b) destroying, modifying, moving or disposing of any molds, tools or equipment for manufacturing said GPT–60 containers, or any business or personal records relating or referring to manufacture, sale, purchase, receipt, delivery or transfer of the GPT–60 containers;

(c) making or having made or causing or permitting to be made or used any more molds for the manufacture of the GPT–60 containers, or setting up or authorizing or assisting the manufacture of such containers by any third party;

(d) advertising, displaying or distributing products, literature or any other materials bearing the number of Robb's design patent and/or Robb's trademark "Canister Pack" except in connection with genuine Canister Pack containers made by Robb;

(e) shipping, selling or filling orders for Robb and/or Canister Pack containers with any containers other than genuine Canister Pack containers made by Robb;

(f) making any false statements, directly or indirectly, concerning Robb or its business to any customers or potential customers of Robb, or disparaging the good name and business reputation of Robb;

Defendants are hereby required to immediately forward to Robb Container Corporation, 1304 Sunset Avenue, Yorkville, Illinois

60560, any orders they have or receive for Robb and/or Canister Pack containers.

Defendants are hereby required to immediately segregate and preserve, and to permit Robb or its designated representatives to inspect and inventory, all Canister Pack containers and all GPT–60 containers, all molds for making the GPT–60 containers and all other articles, literature, documents and materials used for making, advertising, selling or distributing the GPT–60 containers, which are in the possession, custody or control of defendants or their principals, officers, agents, servants, employees, attorneys or affiliated companies or enterprises. It is so ordered.

## III.

*Robb's Motion to Dismiss or Strike Lynn and Sho-Me's Amended Counterclaims*

For purposes of Robb's motion to dismiss, the allegations of Lynn's and Sho-Me's counterclaim must be taken as true. *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1965). And the counterclaim should be dismissed only if it appears beyond doubt that Lynn and Sho-Me can prove no set of facts supporting their claim and entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 42, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In support of its motion to dismiss or strike the counterclaim, Robb first argues that Counts I and II of Lynn's counterclaim, which are based upon a June 29, 1976, contract between Robb and Sho-Me Sales Agency, a partnership of Lynn and Leonard Slaughter, should be dismissed because Slaughter is not a party to this suit. Fed.R.Civ.P. 17(b) provides, in pertinent part, that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held ..." In

---

**6.** Defendants Lynn and Sho-Me have also moved to strike the affidavit of Leonard S. Slaughter, asserting that it is hearsay and inadmissible expert opinion testimony. As the text of our decision reveals, we have not considered the Slaughter affidavit in ruling on Robb's motion for a preliminary injunction. Thus, a ruling on Lynn and Sho-Me's motion to strike is unnecessary.

Illinois, it has long been settled that cases involving indebtedness to a partnership must be brought by the members of the firm and not by an individual partner. *The American Central Railway Co. v. Miles,* 52 Ill. 174, 178 (1869); *Sindelare v. Walker,* 137 Ill. 43, 45 (1891). Accordingly, Count I is dismissed. Count II, however, involves an oral contract between Robb and Sho-Me in which Slaughter was not involved. Robb's motion to dismiss Count II is denied; insofar as Count II incorporates paragraphs 4 and 5 from Count I, which concern the partnership, those paragraphs are stricken.

■■■■■ Counts III through V of Lynn and Sho-Me's counterclaim allege monopolization, attempt to monopolize and conspiracy to monopolize on the part of Robb, in violation of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Under the law of patents, the owner of a patent receives a limited monopoly in his or her invention, that is, an exclusive right to make, use and sell the invention or discovery. *United States v. Univis Lens Co.,* 316 U.S. 241, 250, 62 S.Ct. 1088, 1093, 86 L.Ed. 1408 (1942). The monopoly is limited by time, specifically, seventeen years, 35 U.S.C. § 154. Moreover, this limited monopoly may not extend beyond the scope of the patent itself. *Carbice Corp. v. American Patents Development Corp.,* 283 U.S. 27, 31, 51 S.Ct. 334, 335, 75 L.Ed. 819 (1931). Actions within the scope of a patent grant are thus in certain respects exempt from federal antitrust laws. *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945). And patent holders may assign to another their patents, as well as license others to practice the invention. *Waterman v. Mackenzie,* 138 U.S. 252, 255, 11 S.Ct. 334, 335, 31 L.Ed. 923 (1891).

However,

> there are established limits which the patentee must not exceed in employing the leverage of his patent to control or limit the operations of the licensee ... he may not condition the right to use his patent on the licensee's agreement to purchase, use, or sell, or not to purchase, use, or sell, another article of commerce not within the scope of his patent monopoly.

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 137, 89 S.Ct. 1562, 1583, 23 L.Ed.2d 129 (1969). But in order to demonstrate monopolization, attempts to monopolize and conspiracies to monopolize under Section 2 of the Sherman Act, a complaint must allege that the patent was obtained by intentional fraud or knowing and wilful misrepresentation, *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 176–77, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965), or that the patent holder was in some way attempting to illegally extend the patent monopoly. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 137, 89 S.Ct. 1562, 1583, 23 L.Ed.2d 129 (1969).

■■■ An examination of Counts III through V of Lynn and Sho-Me's counterclaim [7] indicates that there are no allegations of fraud or misrepresentation in the procurement of patent No. D246,029. Indeed, it was Lynn who procured the patent. None of the allegations in these counts, moreover, demonstrate an attempt to expand the scope of the patent, for example,

---

7. These counts allege, in general, that through litigation Robb is attempting to drive Sho-Me and Lynn out of competition with Robb.

Specifically, the counterclaim avers, *inter alia,* that prior to the manufacture of the GPT–60, Robb had a monopoly on this type of container. York Seal, moreover, has a monopoly on the screw-on lids which accompany these containers. Robb allegedly caused Vincent Foglia to contact Sho-Me and Lynn and trap them into setting a basis for Robb's amended complaint, thus interfering with Lynn and Sho-Me's business. Robb and York Seal conspired to force Lynn and Sho-Me to submit its customer list to York; Robb is contacting these customers and notifying them of their lawsuit against Sho-Me and Lynn. Robb is also selling to Sho-Me and Lynn customers directly. In an effort to destroy competition, Robb has attempted to develop a business relation with Beckwith on the condition that Beckwith will not do business with Lynn and Sho-Me. Robb has also furnished defective containers to counter-plaintiffs and has conspired with officials of York Seal to terminate a contract between Lynn, Sho-Me and York.

by forcing Lynn or Sho-Me to purchase, or not to purchase, articles outside the scope of Robb's patent, or by seeking an unfairly high license fee. Counts III through V, in short, fail to state a claim under Section 2 of the Sherman Act and are dismissed.[8]

■ In Count VI of their counterclaim, Lynn and Sho-Me assert that the container portion of the Canister Pack container is unpatentable, since only the lid of the container is patentable. Thus, it is contended that Robb's complaint violates § 1 of the Sherman Act because it is an attempt to tie the unpatentable container, manufactured by Robb, to the lid, which is made by York Seal. It is significant that the design patent at issue in this case shows a container which includes a base portion and a lid. And the file wrapper of the patent refers to the container as a single entity in comparing it to other containers:

> the containers in the picture do not include the decorative structure at the bottom of the container of the instant invention. Furthermore, the lid of the instant invention also includes decorative features. . . .

Reference to a patent applicant's arguments in the file wrapper is proper to assist in the construction of the claim. *Wells Mfg. Co. v. Littelfuse,* 547 F.2d 346, 355 n. 10 (7th Cir.1976).

■ The antitrust laws on tie-in sales establish that there can be no illegal tying in the instant case. A tying arrangement is an "agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Tying arrangements are presumptively unlawful under the antitrust laws whenever a party has sufficient economic power with respect to the tying product to restrain competition

and a "not insubstantial amount of interstate commerce is involved." *Id.* However, to establish the existence of an unlawful tying arrangement, two separate products must be involved. *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 507, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495 (1969); *Hirsh v. Martindale-Hubbell, Inc.,* 674 F.2d 1343, 1346–47 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). In the instant case, it is apparent that there is but one product involved, a patented container consisting of two components, a base and a lid. Therefore, Robb's motion to dismiss Count VI is granted.

---

In conclusion, Marco, Beckwith and GPT's motion to dismiss or for summary judgment is denied; Robb's motion for a preliminary injunction is granted; Robb's motion to dismiss or strike Lynn and Sho-Me's amended counterclaim is granted in part and denied in part. It is so ordered.

## ON MOTION TO MODIFY PRELIMINARY INJUNCTION

■ Defendants' motion to modify this Court's Preliminary Injunction is denied for lack of jurisdiction. As a general rule, the filing of a notice of appeal divests a district court of control over those aspects of a case involved in the appeal. *Griggs v. Provident Consumer Discount Co.,* —— U.S. ——, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982); *Local P–171, Amalgamated Meat Cutters v. Thompson Farms Co.,* 642 F.2d 1065, 1073 (7th Cir.1981). Nevertheless, a district court may consider the merits of the case despite a pending appeal of the grant of a preliminary injunction, *United States v. Price,* 688 F.2d 204, 215 (3d Cir.1982), as well as other issues in the case unrelated to

---

**8.** Counts VII, VIII, IX and X reallege a number of paragraphs contained in Count III, which has been dismissed. Accordingly, Lynn and Sho-Me are given leave to amend their complaint and reallege those paragraphs presently contained in Count III which relate to their other counts.

Moreover, our dismissal of Count III renders unnecessary a ruling on Robb's motion to strike paragraph 12 of that count, which mentioned section 1 of the Sherman Act, as well as a ruling on Robb's motion to strike paragraphs 22, 25–27, 32, 36–38 of Count III.

the appeal, *United States v. City of Chicago,* 534 F.2d 708, 711 (7th Cir.1976). Fed.R. Civ.P. 62(c) provides for modification of an injunction pending appeal, but this rule merely expresses the inherent power of a court to maintain the status quo where it deems such action necessary, *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734–35 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623, 625 (2d Cir.1962). A district court, in such a situation, lacks jurisdiction to consider new evidence or adjudicate substantial rights directly involved in the appeal. *Id.; see also, United States Parcel Service v. United States Postal Service,* 475 F.Supp. 1158, 1161–64 (E.D.Pa.1979). Accordingly, this Court lacks jurisdiction over the instant motion, which we therefore deny. Even if we had jurisdiction, we would deny the motion on the merits. It is so ordered.